Minda SATTERWHITE, on behalf of herself and others similarly situated, Plaintiffs–Appellants,

v.

CITY OF GREENVILLE, Texas, Defendant–Appellee.

No. 75–3377.

United States Court of Appeals, Fifth Circuit.

Jan. 15, 1981.

Larry R. Daves, Tyler, Tex., for plaintiffs–appellants.

Paul Mirengoff, Atty., E.E.O.C., Washington, D. C., for amicus curiae.

John A. Martin, Rod Phelan, Dallas, Tex., for defendant–appellee.

Douglas S. McDowell, Washington, D. C., for amicus curiae Equal Employment Advisory Council.

## ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before COLEMAN, Chief Judge, and BROWN, AINSWORTH, GODBOLD, CHARLES CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, KRAVITCH, FRANK M. JOHNSON, JR., GARZA, HENDERSON, REAVLEY, POLITZ, HATCHETT, ANDERSON, RANDALL, TATE, SAM D. JOHNSON, THOMAS A. CLARK, and WILLIAMS, Circuit Judges.*

PER CURIAM:

This cause has been remanded by the United States Supreme Court, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 for further consideration in light of *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), and *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

Article III, Section 3, of the United States Constitution, requires the existence of a case or controversy as a prerequisite to federal court jurisdiction. The Supreme Court found that such a case or controversy, in the sense of a live and continuing controversy, continued to exist in *Geraghty*, 445 U.S. at 396, 100 S.Ct. at 1208, and, apparently, assumed that one continued to exist in *Roper*, 445 U.S. at 330–332, 100 S.Ct. at 1170. We conclude that the record in this case, however, does not enable us to determine whether or not there is a live and continuing controversy. Therefore, the case is remanded to the district court for further proceedings consistent with the opinions of the United States Supreme Court and with this opinion.

The district court shall first determine, after taking such further evidence in such manner as it may deem appropriate, whether there is a case or controversy sufficient to satisfy the requirements of Article III, that is, whether as set forth in *Geraghty*, there is still a "live controversy" between the defendant and at least some members of the class Mrs. Satterwhite seeks to represent. In the event that the district court determines that there is a case or controversy, then the district court, in accordance with the provisions of Rule 23, F.R.Civ.P., shall determine whether the action is appropriate for class certification, and whether Mrs. Satterwhite is a proper class representative. If it should determine that the action is a proper class action but Mrs. Satterwhite is not a proper class representative, it shall take such action as it may deem necessary to determine whether there is an appropriate class representative. To make these determinations, the district court shall take such evidence as it may deem necessary, and it may, as it sees fit, take that evidence, for convenience, simultaneously with the "case or controversy" hearing or thereafter.

In remanding the case, we hold only that we cannot at this time on the record before us make an authoritative decision. The dis-

* Judge Robert S. Vance did not participate in the consideration of or decision in this case.

trict court should, however, consider all of the factors referred to in our prior opinion, including those considered in *East Texas Motor Freight System Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), which was discussed in that opinion, in determining the class action questions. Our prior opinion did not directly consider the question of case or controversy. In determining that question, the district court should consider the factors mentioned in *Geraghty* and *Roper*, as well as any other factors that may in its opinion be appropriate in deciding whether there is in this case a live and continuing controversy.

REMANDED.

GEE, Circuit Judge, with whom COLEMAN, Chief Judge, and AINSWORTH, HILL, and POLITZ, Circuit Judges, join, dissenting:

Just over two years ago our court, sitting en banc, handed down its opinion dismissing the appeal in this case and remanding it to the district court with instructions to dismiss the complaint. 578 F.2d 987. Before that, the cause had endured a long tenure on the dockets of both the trial court, which dismissed it over five years ago,[1] and our court, which delivered two panel opinions along the way to its en banc resolution.[2] Today the majority remands to the district court for further proceedings, largely delegating to it what seems to me our responsibility under the mandate of the Supreme Court to *ourselves* reconsider the cause in light of that Court's two intervening decisions discussed below. I respectfully dissent from this course of action, which seems to me both to do less than we should and all but to ensure that this very old matter will pend much longer—unnecessarily, in my view.

The events giving rise to the controversy occurred over eight years, ago, when Minda Satterwhite's application for hire as mana-

ger of a small municipal airport was rejected on the asserted ground that, because her husband's business was the primary user of the airport, she had a conflict of interest. When a male applicant was hired, Mrs. Satterwhite sued as representative of a purported class of present and prospective female municipal employees victimized by alleged sexually discriminatory hiring policies on the part of the city. The district court denied certification of the class without conducting an evidentiary hearing and found against Mrs. Satterwhite at a later trial on the merits.[3]

After a panel hearing and the opinions referred to in note 2 above, in which the judgment of the trial court on the merits of Mrs. Satterwhite's claim was affirmed, we held en banc that Mrs. Satterwhite, having neither claims typical of the putative class nor an adequate common nexus or interest with it, was not a proper class representative. We also held that since it had been finally established that Mrs. Satterwhite had never been a member of the putative class of sex discriminatees, since no member of the putative class had in the then six (and now eight) years of the litigation stood forward to champion its cause or even to evidence its existence by her presence, and since the inchoate class had never been certified, the action could not meet the requirements of Rule 23, Federal Rules of Civil Procedure. A dissent emphasized the error of the district court in failing to hold a sufficient hearing on certification of the class and the need to protect the interests of the putative class. The Supreme Court has now remanded the case to us for further consideration in the light of two of its supervening decisions, *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), and *United States Parole Commission v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). In attempting to give full effect to the Court's mandate, since I conclude that

---

1. 395 F.Supp. 698 (N.D.Tex.1975).

2. 549 F.2d 347 (5th Cir. 1977), and, on rehearing, 557 F.2d 414 (5th Cir. 1977).

3. The court concluded that conflict of interest was in fact the ground of the city's refusal to hire her and that a male applicant having such a conflict would have been denied the job as was she.

neither decision bears directly on our case, I believe that the majority should have undertaken to consider not only the holdings of these decisions but their implications. I shall attempt to do so.

*Roper* seems the less apposite of the two. There holders of credit cards issued by a bank sued it, alleging that they and 90,000 other holders of the cards had been charged usurious interest. After the district court refused to certify the class, the bank tendered each class representative the maximum amount that he could have recovered. Though each rejected the tender, the court entered judgment in his favor for that amount and dismissed the action. We held that the action could not be so short–circuited by paying off the intended class representatives and reversed the adverse ruling on class certification. *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978). The Supreme Court affirmed, noting that the "successful" named plaintiffs retained on appeal a personal stake in shifting to the class a portion of the fees and expenses incurred by them in prosecuting the case[4] and that permitting a defendant to abort a class–action appeal by "buying" or "picking" off the named plaintiffs "would be contrary to sound judicial administration." 445 U.S. at 339, 100 S.Ct. at 1174.

I find nothing of great novelty in such a holding: that putative class representatives retaining a real economic interest in having the class certified are entitled to appeal the denial of its certification. The majority opinion, joined in by six justices, is plainly the Court's "attempted solution to the problem of forced settlements in consumer class actions," as the dissent of Justice Powell, joined by Justice Stewart, characterizes it. 445 U.S. at 359, 100 S.Ct. at 1184. It cannot be gainsaid, however, that the opinion lends added credence to the notion that ongoing class actions possess, in the Court's view, a vitality of their own, independent of the class representative's personal claims or the presence of a certified class. This is so, at any rate, where there is a known and existing set or quasi–class, such as the credit-

card holders, which may have been victimized and whose claims may be barred if the "picking off" of named plaintiffs, unquestionably members of the putative class, is countenanced. In additional views, concurring Justice Rehnquist laid stress on the rejection of the tender by the named plaintiffs and on the failure of the defendant to offer class relief, and concurring Justice Stevens saw, in the absent members of the uncertified class, remaining adverse parties before the court sufficient in themselves to support Article III jurisdiction.

*United States Parole Commission v. Geraghty, supra,* approaches our case more closely than does *Roper*–not factually but in the grounds upon which it was placed by the Court. Geraghty, a federal prisoner, challenged certain parole release regulations on his own behalf and on that of a putative class of all federal prisoners eligible or to become eligible for release on parole. The trial court denied class certification and, on the merits of Geraghty's individual claim, upheld the regulations as statutorily and constitutionally valid. After Geraghty appealed, Becher, another prisoner–client of Geraghty's lawyer, sought, was denied, and appealed from the denial of intervention in the case. The appeals were consolidated. Early in the course of the appeal, Geraghty was mandatorily released, having served his sentence, less good–time credits.

When the appeal reached the Supreme Court, a majority of five held that neither the "expiration" of Geraghty's substantive claim nor the absence of a certified class mooted the action. In the view of the Court majority, the circumstances that Geraghty was released and certification was denied and hence that during much of the appeal there was no client or party whatever before the court, was not dispositive of whether the appeal of the class certification denial was moot. The Court of Appeals had reasoned that since, under *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the mootness of the named plain-

**4.** 445 U.S. at 334 n.6, 100 S.Ct. 1171 n.6.

tiff's individual claim *after* a class has been duly certified did not render the action moot on a "relation back" approach the final certification of a class after an initial erroneous denial should lead to the same result.

As I read its opinion, the Court largely espoused this relation–back rationale, describing it at length in reviewing the opinion below and referring to it again in later reasoning that we discuss below. The Court's reasoning commences with a recitation that mootness has two aspects, the presence or absence of "live" issues and a want or presence in any party [5] of some legally cognizable interest in the outcome of the case. The Court viewed the attempted intervention of Becher as dispositive of the first aspect stated–the continuing presence of a "live" controversy. It then addressed the second, or "personal stake," aspect. As nearly as I can discern, the opinion seems to say that where the named plaintiff plausibly claims a personal stake when the suit commences, the fact that this interest "expires" during the course of the litigation does not–given "the flexible character of the Article III mootness doctrine" [6]–prevent the relation back of a later class certification. This being so, the relating–back certification question, like a carrier pigeon, comes to rest in the hands of a representative who, as of that past time to which it homes, was a member of the class and one who had an arguable personal stake in both his own and the class claims.

It is certainly possible to read the Court's opinion more broadly. The most extreme such reading that occurs to me is that a class need have no personal representative at all: only a putative cause and a counsel. I would reject this as too extreme; the Court has, at the very least, continued to observe the contention of requiring a class representative at *some* point in the action.

A second, slightly less extreme reading is that so long as there is at the start of the litigation a purported representative who

claims to be a member of the class, it matters not how fares the individual cause of this class champion: whatever happens to his own claim–indeed, whether or not he remains or ever was even a member of the class–the question of whether a class should be certified is always a live one that he can contest on appeal and, doubtless, on any resulting remand. It is tempting to espouse this view, both because of the Court's evident tendency to view the action itself as vital and because its reasoning in the two opinions that we are directed to apply to this case tends strongly in this general direction. For several reasons, however, I have doubts about taking this simple approach.

For one thing, it comes to about the same thing as Justice Stevens' above–noted special concurrence in *Roper.* No other justice concurred in these views, however, and both opinions speak at great length on other grounds. If the Court majorities had meant to say that hypothetical members of an uncertified class, plus counsel, are always enough to carry on the certification controversy, they could have said so in a few lines. Instead, each said something else in a great many, and something quite different in each opinion.

There are other hints as well that this is not the Court's meaning: footnote 10 in *Geraghty* reserves decision on whether a "controversy" remains where the named plaintiff settles after class certification is denied. If the Court meant the rule to be as is posed above, this situation would present no special case and no problem.

Moreover, again and again in *Geraghty,* Justice Blackmun–speaking of the manner in which Geraghty lost his personal stake in the proceedings–describes his claim as having "expired," a novel and unique usage. Ordinarily, it will not do to put very great strain on a word choice. Yet where one is patently devised with care for the occasion, it is reasonable to conclude that the concept being discussed was thought a significant

---

**5.** A suggestion that seems to imply that there must always *be* a party before the court, though clearly this is no longer certain.

**6.** 445 U.S. at 400, 100 S.Ct. at 1210.

one, worth expressing with precision. *Ex-pire* implies an existence that once obtained but has ended; one whose class claim has expired of necessity once *had* a class claim. It follows that the Court is unwilling to say that any bystander willing to express an interest in the class cause will do as its representative, regardless of whether he is or remains a member of the class or whether he has or maintains a class claim. There-fore, I would not say so either.

Something more seems to be required in a class representative, but what is it? I conclude that at a minimum the would–be representative must possess, at least at the outset of the case, what may be termed the distinguishing characteristics of the class, must be a credit–card holder of the sued bank, as in *Roper*, or be a federal prisoner subject to parole consideration, as in *Ger-aghty*. I conclude further that he must possess, at least at the outset, a colorable claim for relief in common with those of the asserted class that he seeks to draw before the court and represent. It remains to in-quire whether the course of his personal claim affects his standing or capacity as representative of an as–yet uncertified class and, if so, in what way.

The Court's decision in *Geraghty* makes plain that "expiration"–natural demise of the class representative's claim by passage of time so that it becomes factually moot–does not moot the class case or even neces-sarily destroy his representative capacity. *Roper*, the other opinion that we are direct-ed to apply in reconsidering our decision here, arrives at a similar result (on differ-ent grounds) where his claim "succeeds." Neither supplies the answer where, as here, Mrs. Satterwhite's claim lost on the merits and lost in such a manner, moreover, as to settle finally and against her the issue of whether she was ever a member of the putative class. For that answer it is neces-sary to look elsewhere.

I conclude today, as our court did in its former en banc disposition, that it is to be found in *East Texas Motor Freight v. Rod-riguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). It is the closest Court

authority to our case and is neither dis-turbed nor even mentioned in either the *Roper* or *Geraghty* majority opinions. Nor is anything said in either opinion that nec-essarily implies disapproval of its holding. Until its authority is removed or unless we can distinguish it in some principled man-ner, I think we must continue to follow it.

I have reexamined *Rodriguez* and our former treatment of it, as perhaps the Court's mandate of remand implies we should, and I find myself no more able to distinguish it today than our court was able to do two years ago. I will not repeat that effort at length here; it appears in our former en banc opinion in this case, report-ed at 578 F.2d 986, 991–94, and I cannot improve upon it. The Court's holding there may be summarized as follows: where named plaintiffs, who claimed to be victims of racial or ethnic discrimination and who sued for a similar class that was not certi-fied, lost their claims on the merits because they were not qualified for the positions they claimed had been discriminatorily de-nied them, the case was over "for the sim-ple reason that it was evident by the time the case reached [the Court of Appeals] that the named plaintiffs were not proper class representatives under Fed.Rule Civ.Proc. 23(a)," because they "were not members of the class of discriminatees they purported to represent ... [A] class representative must be part of the class and 'possess the same injury' as the class members." *Rodri-guez*, 431 U.S. at 403, 97 S.Ct. at 1896 (footnote omitted). The Court goes on af-ter reciting "the simple reason" for its deci-sion noted above–that plaintiffs were not members of the class of discriminatees they purported to represent, it having been es-tablished on the merits that they were not discriminated against but were merely un-qualified–to note additional reasons why they were not adequate class representa-tives. There is no indication in the opinion, however, that "the" reason initially stated was not of itself a sufficient ground for the decision.

Like the three truck drivers in *Rodriguez*, Mrs. Satterwhite lost her case on the mer-

its, at a time when no class had been certified, and lost it because it was determined that her application was properly denied for reasons having nothing to do with discrimination. She was therefore no part of any putative class of sex discriminatees and suffered no such injury in common with it. This is evident as the case stands before the Court of Appeals–the same Court of Appeals that was lessoned by a unanimous Supreme Court in *Rodriguez* –and the result should be the same here as it was there.

Thus, the case rests before us without a member of the putative class to represent it, only a named plaintiff who has been finally determined to be no member of it. The "personal stake" aspect of mootness is satisfied. As for the "live controversy" question, its other aspect referred to by the Court in *Geraghty*, 445 U.S. at 396, 100 S.Ct. at 1208, no would–be intervenor[7] has come forward during its eight–year sojourn in the courts, nor has there been during that time any other indication whatever that a wronged class is waiting in the wings for redress. Doubtless her absence does not, alone, constitute such a dispositive demonstration here as Becher's presence did to the *Geraghty* Court; but when combined with an entire absence of other signs of life, it may be seen as such. The case is therefore moot and should be dismissed.

In closing, I acknowledge the presence of a tension between the general thrust of the Court's *Geraghty* and *Roper* decisions and its unanimous decision in *Rodriguez*, which reversed that of our panel, handed down only three years and several months ago. Perhaps the Court will now overrule, disapprove,[8] or distinguish *Rodriguez* ; the former two actions, however, are beyond our powers and the latter beyond my ability. Accordingly, I would, as we did before, dismiss the appeal, vacate the panel opinion, and remand to the district court with instructions to vacate its order and dismiss the complaint.

---

**7.** The Court seems to have regarded the *presence* of such a would–be intervenor as demonstrating the existence of a live controversy there. 445 U.S. at 396, 100 S.Ct. at 1208.

---

**8.** As it could easily have done in *Geraghty* by simply including it with three other cases that are at least called in question as "less flexible" in their approach by footnote 7 of that opinion. 445 U.S. at 400, 100 S.Ct. at 1210 n.7.