**Charlene BERRY and Virginia Winker, Plaintiffs,**

v.

**Samuel R. PIERCE, Jr., Secretary Department of Housing and Urban Development, Defendant,**

**Rita M. Vinson, Intervenor-Applicant.**

**No. S–78–33–CA.**

United States District Court,
E.D. Texas,
Sherman Division.

March 9, 1983.

John H. Hannah, Jr., U.S. Atty., Otis Carroll, Asst. U.S. Atty., Tyler, Tex., for defendant.

James C. Barber, Dallas, Tex., for plaintiffs.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

On this 11th day of February, 1983, came on for consideration the motion of Rita M. Vinson to intervene in this action as a plaintiff and class representative, and the motion of the defendant to dismiss, or, in the alternative, for summary judgment.

The proper disposition of these motions hinges upon a conversancy with the past procedural history in this case.

### I

On February 15, 1978, Charlene Berry and Virginia Winker filed a class action complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(a), and Executive Order No. 11478, 34 Fed.Reg. 12985 (1969), *as amended,* alleging that the defendant maintained a policy, practice, custom, or usage of discriminating against them and the class they represented in regard to compensation, terms, conditions, and privileges of employment because of their sex. Berry and Winker were both part-time attorney-advisors who alleged that they were each passed over numerous times for full-time positions for which they were qualified, positions that were always filled by men. The class complaint alleges specifically that the defendant federal agency engaged in a policy of failing to appoint and hire women because of their sex to salary grades GS–13 or higher, and it alleges that no woman has ever succeeded

in ascending from part-time to full-time status, while male part-time employees make the transition within short periods of time.

■ In their complaint, Berry and Winker allege that, prior to filing the complaint, they approached Equal Employment Opportunity counselors with their grievances, and that on or about September 9, 1976, they filed formal administrative complaints, in conformity with procedures that had been established by the defendant pursuant to 42 U.S.C. § 2000e–16(b) and 29 C.F.R. § 1613.-211, *et seq.,* formerly 5 C.F.R. § 713.211, *et seq.*[1] After 180 calendar days had passed without defendant issuing any final decision on plaintiffs' administrative complaint, plaintiffs filed their complaint in federal court. *See* 42 U.S.C. § 2000e–16(c), 29 C.F.R. § 1613.281(b), formerly 5 C.F.R. § 713.281(b). In defendant's answer, filed August 25, 1978, defendant raised no affirmative statute of limitations defense drawing into question Berry's or Winker's exhaustion of administrative remedies. Defendant has never argued at any point during the past four and a half years of litigation that Berry or Winker failed to timely exhaust their administrative remedies. At this stage, such an affirmative defense has been waived. Fed.R.Civ.P. 8(c). 5 C. Wright and A. Miller, Federal Practice and Procedure, § 1278 at 339 (1969); *Dunn v. Koehring,* 546 F.2d 1193, 1198–99 (5th Cir. 1977).

Discovery proceeded in this case at a normal pace until, on July 2, 1979, Berry and Winker and the defendant were able to submit for the court's approval a stipulation of compromise and settlement of the named plaintiffs' individual claims against the defendant.[2] Shortly thereafter, by an order signed July 2, 1979, and filed July 5, 1979, this court approved the proposed stipulation, pursuant to which Berry and Winker would voluntarily dismiss their claims with prejudice, and ordered the defendant "immediately" to disseminate and post notices to the putative class members of their right to intervene and to assume the role of class representative. *See* Order of July 2, 1979, appended to this Memorandum Opinion. The order required putative class members to make manifest their intent to intervene by letter to the United States District Clerk within thirty days of the date of the order, that is, by August 1, 1979. Notwithstanding the language and the intent of the order, defendant did not begin to give notice to putative class members of the settlement and of their right to intervene until July 26, 1979. Some of the notices were apparently not posted until after the deadline for filing letters had expired. Nevertheless, three putative class members, including the intervenor-applicant, Vinson, filed timely letters of intervention on July 30, 1979; a fourth class member's letter arrived August 2, 1979.

On August 8, 1979, one of these four putative class members, Margaret Wells, spoke to an EEO counselor about her wish to file a formal administrative complaint. Agents of the defendant informed Ms. Wells, however, that they could not discuss her complaint with her because she was involved in this lawsuit.[3]

---

1. By letter dated July 22, 1977, plaintiffs amended their administrative complaints to include class allegations, pursuant to 5 C.F.R. § 713.601 *et seq.,* which became effective April 18, 1977. (Now codified at 29 C.F.R. § 1613.-601.)

2. The stipulated settlement granted Berry $17,-042 in back pay, with retirement, sick leave, and annual leave credited to reflect full-time employment from August 9, 1974. Winker, by the terms of the settlement, was promoted immediately to a full-time GS–14 position, and was granted back pay in excess of $29,930, with retirement benefits, sick leave, and annual leave credited to reflect full-time employment from August 9, 1974. This settlement also provided that defendant pay reasonable attorney's fees at a rate of $100 per hour, totalling $12,-342.50.

3. There was then in effect in this court a standing order governing class actions prohibiting attorneys for either plaintiffs or defendants from engaging in certain communications with putative class members without prior authorization from the court. *See* Manual for Complex Litigation, App. § 1.41, "Sample Pretrial Order No. 15"; *Gulf Oil Company v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

On about October 1, 1979, intervenor-applicant also met with an EEO counselor to attempt to initiate the process of filing an administrative complaint. On October 25, 1979, this court issued an order "authorizing" defendant to communicate with Wells, Vinson, and a third intervenor "to complete the processing of any administrative charges of discrimination they desire to file in this matter." Vinson's informal complaint review process was completed on November 6, 1979. On November 19, 1979, Vinson filed a formal administrative complaint against defendant's Dallas Area Office and Regional Office for Region VI. On February 1, 1980, Vinson received a final decision, in which the defendant agency stated that it could not consider her administrative complaint to the extent that it alleged class-wide discrimination, and it advised her to file a new complaint setting forth only personal allegations. On February 21, 1980, Vinson appealed that final decision. After more than 180 days had passed without any action being taken on her appeal, Vinson formally filed, on March 23, 1981, the motion to intervene that is now before the court. 29 C.F.R. § 1613.-281(d). *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). On May 18, 1981, fifteen months after filing her appeal, Vinson received a response from the Equal Employment Opportunity Commission (EEOC), reversing the agency's final decision, on the grounds that Vinson had sought but not received proper counseling as to how to file the proper administrative remedy seeking class relief. The EEOC therefore ordered that the agency "provide appellant with advice and information on filing a class [administrative] complaint and that such a complaint, if properly filed, be accepted." The same EEOC appeal decision notified Vinson that this action was the EEOC's "final decision," and that Vinson, therefore, had a right to file suit in the appropriate United States District Court. 29 C.F.R. § 1613.282. She had, of course, already exercised that right.

On December 31, 1979, after Vinson had initiated her informal and formal administrative complaint process, defendant moved to dismiss or, alternatively, for summary judgment, upon the grounds:

(1) that the case became moot, when Berry and Winker settled their individual claims prior to certification of a class; and

(2) that none of the four putative class members who filed letters of intervention had exhausted their administrative remedies at the time they submitted those letters (on July 30, 1979).

After Vinson completed the administrative complaint process and formally filed a motion to intervene, accompanied by a complaint in intervention, defendant opposed that motion upon three grounds:

(1) The case became moot, when Berry and Winker settled their individual claims prior to certification of a class;

(2) Vinson was required to have already exhausted her administrative remedies, when she filed her letter of intervention; and

(3) Vinson's claims are barred, because her administrative complaint was not timely filed.

Because of overburdened dockets[4] the motions are reached only now.

Before addressing sequentially defendant's arguments, it will promote clarity and understanding to point out what has not been placed in issue by these motions. It is not contested that Berry and Winker properly exhausted *their* administrative remedies. Furthermore, the propriety under Rule 23, Fed.R.Civ.P., of certification of a class in this case, or of Vinson's qualifications under that rule to act as a class representative, are not here being resolved.[5]

---

4. There are currently 932 actions pending before this judge. The three other judges of the Eastern District have dockets of 837, 941, and 940, respectively.

5. We thus follow the distinction drawn by Judge Higginbotham:

    For meaningful analysis, this question of whether the entities before the court satisfy Article III's requirement[s] ... ought to be separate from and should not be confused

Such issues would more properly be addressed, assuming defendant should raise them, after intervention is allowed and some discovery has been had. Similarly, defendant does not specifically allege that Vinson fails to meet the requirements of permissive intervention under Rule 24.[6] Instead, all of defendant's objections are raised upon the theory that this court now lacks subject matter jurisdiction over the case, and that Vinson's claims are either jurisdictionally barred or barred by time constraints in the nature of a statute of limitations. Therefore, for the purposes of these motions, it will be assumed that there is a certifiable class, that Vinson's claims are representative of those of the class members, and that Vinson will adequately and vigorously protect the interests of those class members.

## II

### Defendant's Contention that the Case is Moot.

The Constitution provides that the federal judiciary may exercise judicial power only over live "cases" or "controversies." U.S. Const., Art. III, Sec. 2, cl. 1. Defendant contends that until the class is certified, the only controversy that subsists in a purported class action is that between the named plaintiffs and the defendants. Therefore, it is defendant's position that, upon settlement and dismissal of the individual claims of Berry and Winker, this case became irretrievably moot, no matter what untoward effects are visited upon the putative class members. Defendant relies principally upon *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), *Board of School Commissioners v. Jacobs,* 420 U.S. 128, 129, 95 S.Ct. 848, 849, 43 L.Ed.2d 74

(1975) (per curiam), and *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam).

In *Sosna,* the Supreme Court considered a challenge to the one-year durational residency requirement for divorce in Iowa. After the class had been certified, the named plaintiff's own claim became moot, since, with the passage of time in litigation, she fulfilled the residency requirement. Nevertheless, the court found that the case had not become moot:

> Although the controversy is no longer live as to appellant Sosna, it remains very much alive for the class of persons she has been certified to represent.

*Sosna,* 419 U.S. at 401, 95 S.Ct. at 558. However, one factor upon which the court relied was that

> when the District Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by appellant. We are of the view that this factor significantly affects the mootness determination.

*Sosna,* 419 U.S. at 399, 95 S.Ct. at 557.

Defendant in the case at bar argues that certification is, therefore, crucial, and since the class was not yet certified at the moment of settlement, the case must be dismissed. In *Jacobs* and *Weinstein,* the Court, in terse *per curiam* opinions, appears to have ordered dismissal on precisely those grounds.

Neither *Sosna, Jacobs,* nor *Weinstein* posed the specific problem confronted here, for in those cases no putative class members had manifested a desire to intervene and assume the mantle of class representative.

---

with the inquiry into the relationship between the class representative and the putative class. Although courts sometimes mistakenly analyze the link between the representative and the putative class in Article III terms, that relationship is defined by Rule 23. *Vuyanich v. Republic National Bank of Dallas,* 82 F.R.D. 420, 427 (N.D.Tex.1979). *Cf. East Texas Motor Freight Systems, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

**6.** Vinson's complaint in intervention alleges that she, as a GS-11 employee at defendant's Dallas facility in defendant's Region VI, was passed over numerous times for promotion to jobs for which she was qualified, always in favor of men. The complaint is, therefore, facially proper, and alleges facts that make Vinson a member and proper representative of the original putative class.

242

*Cf. United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). In any event, it is clear that subsequent decisions of the Supreme Court have eroded the rigidity of the rule *Sosna* articulated, and *Jacobs* and *Weinstein* appear, in fact, to have been effectively overruled. *See United States Parole Commission v. Geraghty,* 445 U.S. 388, 401, 100 S.Ct. 1202, 1211, 63 L.Ed.2d 479 (1980).

In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court reached the merits of a dispute involving the constitutionality of Florida's pre-trial detention procedures, although there was no evidence that any of the named plaintiffs had still been in detention at the time the class was certified. Since the case became moot as to the named plaintiffs prior to certification, a strict reading of *Sosna* would have required dismissal. Nevertheless, the court took a more pragmatic and realistic approach, finding that it could retain jurisdiction, at least where

> it is by no means certain that any individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case.

*Gerstein,* 420 U.S. at 111, n. 11, 95 S.Ct. at 861, n. 11. *See Sosna,* 419 U.S. at 402, n. 11, 95 S.Ct. at 559, n. 11. (In such cases, "certification can be said to 'relate back' to the filing of the complaint".) *See* A. Chayes, Foreword: Public Law Litigation and the Burger Court, 96 Harv.L.Rev. 4, 41 (1982) (hereinafter cited as "Chayes"); Note, Class Standing and Class Representative, 94 Harv.L.Rev. 1637 (1981) (hereinafter cited as "Note"). *Sosna* was further eroded by two 1980 Supreme Court cases, *Guaranty National Bank of Jackson v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980), and *United States Parole Commis-*

*sion v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980).

In *Roper,* two holders of credit cards under the "BankAmericard" Plan filed a class action complaint against a national bank, alleging usurious charges. The district court denied certification of a class of over ninety thousand card holders in Mississippi, after which the bank tendered full payment to the named plaintiffs of their individual claims. Although the plaintiffs refused the tender, the district court entered judgment in favor of the two plaintiffs. The plaintiffs appealed the denial of certification. The defendants asserted that the case was moot. The Court of Appeals for the Fifth Circuit disagreed, in language that is still binding on this court and highly pertinent to the case *sub judice:*

> The notion that a defendant may short-circuit a class action by paying off the class representatives either with their acquiescence or, as here, against their will, deserves short shrift. Indeed, were it so easy to end class actions, few would survive. One well-publicized danger in the class action is the possibility that it will be used to collect quick, undeserved damages; this type of effort to establish a quick coup has been called a "strike suit." We have held that prior to certification a class action can not be dismissed merely because the representatives are satisfied, unless there is notice to the class of the proposed dismissal and a determination by the court that the dismissal is proper, as required by Rule 23(e) F.R.C.P., *Pearson v. Ecological Science Corp.,* 5 Cir., 1975, 522 F.2d 171, 177, *cert. denied,* 425 U.S. 912 [96 S.Ct. 1508, 47 L.Ed.2d 762] ... and cases cited therein.... By the very act of filing a class action, the class representatives assume responsibilities to insure that the dismissal does not prejudice putative members.

*Roper v. Consurve, Inc.,* 578 F.2d 1106, 1110 (5th Cir.1978), *aff'd sub nom. Deposit Guaranty National Bank of Jackson v. Roper,* 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427. *See also Zeidman v. J. Ray McDermott,* 651 F.2d 1030, 1042–43 (5th Cir.1981). *Cf., McArthur v. Southern Airways,* 556 F.2d

298, 302–303 (5th Cir.1977), *vacated and dismissed on other grounds,* 569 F.2d 276 (5th Cir.1978) (*en banc*), *overruled by Coke v. General Adjustment Bureau,* 640 F.2d 584, 591 n. 14 (5th Cir.1981) (*en banc*)[7], and by *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

The Supreme Court affirmed *Roper,* expressing some of the same concerns that had troubled the Fifth Circuit:

> To deny the right to appeal simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs would be contrary to sound judicial administration. Requiring the multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement. It would be in the interest of a class-action defendant to forestall any appeal of denial of class certification if that could be accomplished by tendering the individual damages claimed by the named plaintiffs.

*Deposit Guaranty National Bank v. Roper,* 445 U.S. at 339, 100 S.Ct. at 1174. Although the Court proceeded to find a live controversy upon the narrow, conventional ground that the named plaintiffs retained a pecuniary stake in class certification as a means of spreading litigation costs, the Court indicated that numerous other considerations might also have sufficed to defeat the mootness challenge:

> We begin by identifying the interest to be considered when questions touching on justiciability are presented in the class action context. First is the interest of the named plaintiffs: their personal stake in the substantive controversy and their related right as litigants in a federal court to employ in appropriate circumstances the procedural device of a Rule 23 class action to pursue their individual claims. A separate consideration, distinct from their private interests, is the responsibility of named plaintiffs to represent the collective interests of the putative class. Two other interests are implicated: the rights of putative class members as potential intervenors, and the responsibilities of a district court to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it.

445 U.S. at 331, 100 S.Ct. at 1170. All of these practical considerations—and especially the solicitude for the rights of "putative class members [of an uncertified class] as potential intervenors"—betoken an erasure of the bright line *Sosna* had sought to draw at class certification. It would be illogical and ironic, if the rights of members of a class not yet certified were less worthy of judicial vigilance than those of members of a class that had already been judicially found a nullity. Just as defendants should not be permitted to "pick off" class actions immediately after denial of certification, they should not be permitted to subvert them immediately prior to certification, at least where putative class members manifest in timely fashion their desire to intervene.

In *United States Parole Commission v. Geraghty,* the Court more explicitly pared back the limitations of *Sosna,* and demonstrated the inherent liberality and pragmatism of mootness analysis in the class action context. In *Geraghty,* the prisoner filed a class action contesting the legality of federal parole release guidelines. The district court denied class certification and then granted summary judgment for the defendants. Geraghty appealed both the denial of class certification and the decision on the merits. Before the case reached the Supreme Court, Geraghty had been released, and, thus, his individual stake in the action had, apparently, expired. The Supreme Court formally proceeded through a two-pronged test of mootness:

> Mootness has two aspects: "When the issues presented are no longer 'live' or the

7. *See, Oaxaca v. Roscoe,* 641 F.2d 386, 388 (5th Cir.1981).

parties lack a legally cognizable interest in the outcome."

445 U.S. at 396, 100 S.Ct. at 1208.

The Court required only one sentence to explain why the first prong of the test was satisfied:

It is clear that the controversy over the validity of the Parole Release Guidelines is still a "live" one between petitioners and *at least some members of the class respondent seeks to represent.*

445 U.S. at 396, 100 S.Ct. at 1208 (Emphasis added). Plainly, the Court was adopting the broader rationale of *Sosna*—that the class claims can be fairly litigated in the absence of the class representative—while abandoning its ritualistic solemnization of class certification. Most commentators have applauded this development, as reflecting a more rational and candid approach to mootness. *See* Chayes, 96 Harv. L.Rev. 4 (1982); Note, 94 Harv.L.Rev. 1637 (1981). *Geraghty* appears to rest upon a sounder basis than *Sosna* for the following reasons as well:

As Rule 23, Fed.R.Civ.P., is merely a procedural device designed to assist the courts and litigants to efficiently handle similarly founded suits, *Roper v. Consurve, Inc.,* 578 F.2d 1106 (5th Cir.1978); it cannot be argued that the failure to certify a proposed class action has any bearing upon the court's subject matter jurisdiction.

*Williams v. Southern Bell Telephone & Telegraph Co.,* 464 F.Supp. 367, 369 (S.D.Fla. 1979).

After finding a "live" controversy, the Court in *Geraghty* formally pursued the second prong of its mootness analysis—the search for a "legally cognizable interest" or "personal stake." The Court concluded—circularly, and somewhat implausibly—that Geraghty's Rule 23 "right" to certify a class would in this case satisfy the "personal stake" requirement of Article III. Although this analysis ostensibly focused upon the interests or "rights" of the class representative, the Court admitted that the "right" it found sufficient "is more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement." 445 U.S. at 403, 100 S.Ct. at 1212. The Fifth Circuit has generally interpreted *Geraghty* as articulating, effectively, a single-pronged test, with no "personal stake" component. Thus, upon remand in *Satterwhite v. City of Greenville,* 634 F.2d 231 (5th Cir.1981), after its earlier opinion had been vacated and remanded in light of *Roper* and *Geraghty,* 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773, the Court of Appeals gave instructions that

the district court shall first determine ... whether there is a case or controversy sufficient to satisfy the requirements of Article III, that is, whether as set forth in *Geraghty,* there is still a "live controversy" between the defendant and at least some members of the class Mrs. Satterwhite *seeks to represent.* In the event that the district court determines that there is a case or controversy, then the district court, in accordance with the provisions of Rule 23, F.R.Civ.P., shall determine whether the action is appropriate for class certification....

634 F.2d at 231 (emphasis added). *Accord: Walker v. Jim Dandy Corp.,* 638 F.2d 1330, 1335 (5th Cir.1981); *Ford v. United States Steel Corp.,* 638 F.2d 753, 759 (5th Cir.1981); *Armour v. City of Anniston,* 622 F.2d 1226 (5th Cir.1980) (on remand from 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773). *See also,* Note, 94 Harv.L.Rev. at 1647 ("*Geraghty* is an abandonment of the personal stake requirement masquerading as its application.").

The *Geraghty* Court confronted *Sosna, Jacobs,* and *Weinstein* head-on and limited all three:

Although one might argue that *Sosna* contains at least an implication that the critical factor for Article III purposes is the timing of class certification, other cases, applying a "relation back" approach, clearly demonstrate that time is not crucial.

445 U.S. at 398, 100 S.Ct. at 1209. Similarly, *Jacobs* and *Weinstein* were drained of their precedential value:

Although the court perhaps could have remanded *Jacobs* and *Weinstein* for reconsideration of the class certification issue, ... the parties in those cases did not suggest "relation back" of class certification.

445 U.S. at 401, 100 S.Ct. at 1211. *See also* 445 U.S. at 424, 100 S.Ct. at 1223 (*dissenting opinion,* mourning demotion of *Jacobs* and *Weinstein* to "second class precedents").

The gist of *Roper* and *Geraghty,* as the Fifth Circuit has construed them, is that mootness questions shall be resolved by a pragmatic and sensitive inquiry into the "purposes behind the Article III mootness doctrine," *Zeidman v. J. Ray McDermott,* 651 F.2d 1030, 1043 (5th Cir.1981):

> The purpose ... is to assure that the case is in a form capable of judicial resolution. The imperatives of a dispute capable of judicial resolution are sharply presented issues in a concrete factual setting and self-interested parties vigorously advocating opposing positions....

*Geraghty,* 445 U.S. at 403–04, 100 S.Ct. at 1212, quoted in *Zeidman,* 651 F.2d at 1043. In resolving this issue, the Supreme Court has considered such factors as whether or not putative class members seek to intervene, 445 U.S. at 396, 100 S.Ct. at 1208, and "the vigorousness" of the actual representation being afforded the class by the class attorney. 445 U.S. at 404, 100 S.Ct. at 1212.

In light of such a standard, the case before this court is much simpler than *Geraghty* or *Roper.* Although the named plaintiffs in the instant case have had their individual claims mooted, as did those in *Geraghty* and *Roper,* an intervenor with a live, personal, conventional stake in the controversy, who moreover, wishes to act as the formal class representative, is present in this case. Despite late posting and dissemination of the notice required by the order of July 2, 1979, leaving putative class members less than a week in which to file letters of intervention, three such letters were timely filed, and the fourth followed only a day late.[8] *Cf. Geraghty,* 445 U.S. at 390, n. 1, 100 S.Ct. at 1205, n. 1 (live controversy where six class members moved to substitute); *Roper,* 445 U.S. at 330, 100 S.Ct. at 1169 (live controversy could be assumed, although none out of a class of 90,000 ever moved to intervene). The intervenor is represented by the same highly experienced, highly competent, civil rights attorney who secured for the named plaintiffs a satisfactory settlement of their claims, and that attorney has vigorously advocated and protected the rights of Vinson and of the putative class members.[9] Such a proposed intervention by a party with a live controversy in behalf of others with a live controversy cannot be stymied by a pragmatic or realistic mootness doctrine. In *United Airlines v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), the Supreme Court was confronted with a situation in which the district court had denied class certification but had ruled in the named plaintiffs' favor on the merits of their Title VII sex discrimination claims. A putative class member sought to intervene after final judgment to appeal the denial of class certification. The Supreme Court held in her favor, analyzing the case purely in terms of Rule 24(b), Fed.R.Civ.P., rather than in Article III terms. Nevertheless, since mootness is a question concerning the fundamental powers of a federal court under Article III, had the Court considered the case moot (which a vital *Sosna* would have suggested), it would have been obliged to dismiss the case *sua sponte.* *See Sosna,* 419 U.S. at 398, 95 S.Ct. at 556. In fact, in *Geraghty,* the Court retrospectively declared *McDonald* to have been a holding upon mootness. 445 U.S. at 400, 100 S.Ct. at 1210 ("*Gerstein, McDonald,* and *Roper*

---

**8.** The Order of July 2, 1979, plainly set a deadline for such letters at August 1, 1979. In view of the late notice afforded the class members, this court would certainly have honored letters filed beyond that deadline, but class members may not have foreseen such a possibility.

**9.** During the long pendency of the defendant's motion to dismiss and Vinson's motion to intervene, *see* fn. 4, *supra,* intervenor's counsel has sought to prod this court into action through several telephone calls and at least six letters (each apprising the court of pertinent developments in the case law).

are all examples of cases found not to be moot, despite the loss of a 'personal stake' in the merits of the litigation by the proposed class representative.").

■ Under all the circumstances, it appears that the intervenor-applicant and other members of the putative class maintain a live controversy with the defendant, that her attorney is vigorously representing all of their interests, that the case is in a form classically capable of judicial resolution, and that the issues are sharply presented in a concrete factual setting by opposing, self-interested parties. Accordingly, this case is not moot.[10]

## III.

*Defendant's Contentions that Vinson May Not Intervene Because She Did Not Timely Exhaust her Administrative Remedies*

Defendant contends that (1) Vinson should have completely exhausted her administrative remedies prior to submitting her letter of intervention on July 30, 1979, or that (2) Vinson should have at least initiated her administrative remedy process by August 26, 1979, thirty days after she presumably received actual notice of the intention of the class representatives to cease prosecuting her claim. These failures to timely process her administrative remedy, defendant maintains, are jurisdictional shortcomings that preclude the court from hearing Vinson's claims.

Vinson and the putative class members are federal employees who have sued under Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(a). That Act contemplates that an employee who believes he has been discriminated against shall file an administrative complaint with the federal agency at which he is employed. 42 U.S.C. § 2000e–16(b). If the employee is unsatisfied with the resultant agency action, he may either file suit in federal court, or appeal the administrative ruling to the Equal Employment Opportunity Commission (formerly to the Civil Service Commission). 42 U.S.C. § 2000e–16(b). The employee may bring civil suit in federal district court thirty days after receiving notice of final action from either the agency or the Commission, or if there has been no action upon his complaint or appeal, 180 days after filing such complaint or appeal. 42 U.S.C. § 2000e–16(c). This administrative procedure is analagous to the EEOC charge procedure set forth at 42 U.S.C. § 2000e–5(e)–(f), which governs Title VII actions against private employers, and both procedures serve the twin purposes of giving notice to the employer of the nature and extent of the grievances, and encouraging and facilitating settlement and voluntary compliance with Title VII. *Crawford v. United States Steel Corp.,* 660 F.2d 663, 666 (5th Cir.1981); *Southern Bell Telephone & Telegraph Co.,* 464 F.Supp. 367, 369–370 (S.D.Fla.1979). Analysis of the two procedures has, therefore, generally been parallel, if not identical. *Oaxaca v. Roscoe,* 641 F.2d 386, 388, 391 (5th Cir.1981). *See Bickham v. Miller,* 584 F.2d 736 (5th Cir.1978). *See also Eastland v. Tennessee Valley Au-*

10. *See, Deposit Guaranty National Bank v. Roper,* 445 U.S. 326, 342, 100 S.Ct. 1166, 1176, 63 L.Ed.2d 427 (Stevens, J., *concurring*):

In my opinion, when a proper class action complaint is filed, the absent members of class should be considered parties to the case or controversy at least for the limited purpose of the court's Article III jurisdiction. If the district court fails to certify a class, I believe they remain parties until the final determination has been made that the action may not be maintained as a class action. *See also, Kremens v. Bartley,* 431 U.S. 119, 142, 97 S.Ct. 1709, 1722, 52 L.Ed.2d 184 (Brennan, J., *dissenting*):

*Franks* [*v. Bowman Transp. Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444], *Sosna,* and *Gerstein* ... plainly recognize and act upon the premise that, given the representative nature of class actions, the elimination of named plaintiffs ordinarily will have no effect on the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr* [,369] U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] (1962). Certainly in this appeal there can be no question of adequate adversity and cogency of argument. Attorneys for the class continue diligently to defend their judgment....

*thority,* 553 F.2d 364, 368, *cert. denied* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), *overruled on other grounds by Coke v. General Adjustment Bureau,* 640 F.2d 584, 591–593 nn. 14–15 (5th Cir.1981) (*en banc*).

It has been conclusively determined in this Circuit that an employee's lack of timeliness in notifying the appropriate administrative authority of a discrimination complaint creates no insurmountable jurisdictional bar to the hearing of the employee's complaint. *Oaxaca v. Roscoe,* 641 F.2d at 388. The soundness of that decision—in any event, not open to question by this court—has been recently buttressed by the Supreme Court's decision in *Zipes v. Transworld Air Lines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), holding that the closely analogous timely filing of an EEOC charge, pursuant to 42 U.S.C. § 2000e–5(e), "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling," *Zipes,* 455 U.S. at 393, 102 S.Ct. at 1132. In so ruling, the Supreme Court cited with approval its previous holding in *Love v. Pullman,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972):

> Declining to read literally another filing provision of Title VII, we explained that a technical reading would be "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." 404 U.S. at 527, 92 S.Ct. at 619.

*Zipes,* 455 U.S. at 397, 102 S.Ct. at 1134.

■ To the extent that the defendant's motion is a motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), it must be denied. However, the defendant can properly move, and has moved, to dismiss upon statute of limitations grounds under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. *Oaxaca,* 641 F.2d at 391. Defendant's motion, thus construed as a Rule 12(b)(6) motion, will thus be addressed.

It is inconceivable that defendant's motion could be granted in the present posture of this case, for the intervenor-applicant has not had an opportunity to engage in discovery and to develop facts that might justify equitable tolling of the statute. *Oaxaca,* 641 F.2d at 391. However, it is abundantly clear that, under the decisions of this Circuit, such a showing by plaintiff is supererogatory for two reasons:

■ (a) the timely filing of administrative complaints by Berry and Winker fully exhausted the filing requirements of all the putative class members, including Vinson, for the purposes of this law suit; and

■ (b) the facts of this case already in the record compel equitable tolling of any limitation period that might have expired.

### A.

### *The Single-Filing Rule*

It has long been the policy of the Court of Appeals for the Fifth Circuit, subsequently affirmed by the Supreme Court, to permit complete class relief to all members of the class, including those class members who have not filed EEOC charges, so long as the original class representative filed a timely charge. *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496 (5th Cir.1968); *see also Zipes,* 455 U.S. at 396, 102 S.Ct. at 1134 (1982); *McDonald,* 432 U.S. at 389 n. 6, 97 S.Ct. at 2467 n. 6; *Franks,* 424 U.S. at 771, 96 S.Ct. at 1267; *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975). The reasoning of Judge Bell bears repetition:

> It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful. The better approach would appear to be that once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated. . . .
>
> Racial discrimination [like sex discrimination, *see Burns v. Thiokol Chemical Co.,* 483 F.2d 300, 306 (5th Cir.1973),] is by definition class discrimination, and to re-

quire a multiplicity of separate identical charges before the EEOC, filed against the same employer, as a prerequisite to relief through resort to the court would tend to frustrate our system of justice and order.

*Oatis,* 398 F.2d at 498–499. Subsequent decisions of the Court of Appeals have, upon the *Oatis* rationale, extended the single-filing rule to a variety of circumstances asymptotically approaching the precise situation presented by this case. *Wheeler v. American Home Products,* 563 F.2d 1233, 1238 (5th Cir.1977), *republished at* 582 F.2d 891 (5th Cir.1977) (intervenors in class action later declared not maintainable as class action, need not file, if original plaintiff did); *Bernard v. Gulf Oil Company,* 596 F.2d 1249, 1254–55 (5th Cir.1979), *readopted in relevant part upon review en banc,* 619 F.2d 459, 463 (5th Cir.1980), *affirmed on other grounds,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (if one named plaintiff has filed, other named plaintiffs need not file in uncertified class action); *Allen v. United States Steel Corp.,* 665 F.2d 689, 695 (5th Cir.1982) (single-filing rule applied to multiple plaintiff non-class action). *Accord: Crawford v. United States Steel Corp.,* 660 F.2d 663, 665 (5th Cir.1981); *Clanton v. Orleans Parish School Board,* 649 F.2d 1084, 1095 n. 13 (5th Cir.1981); *Olivares v. Martin,* 555 F.2d 1192, 1196–97 (5th Cir.1977); *Romasanta v. United Air Lines,* 537 F.2d 915 (7th Cir.1976), *affirmed sub nom. United Air Lines, Inc. v. McDonald,* 432 U.S. at 389 n. 6, 97 S.Ct. at 2467 n. 6; *Vuyanich v. Republic National Bank of Dallas,* 82 F.R.D. 420, 437 (N.D.Tex.1979) (Higginbotham, J.); *Williams v. Southern Bell Telephone & Telegraph Company,* 464 F.Supp. 367, 369 (S.D.Fla.1979).

The precise question to be now resolved is whether a "non-filing" putative class member may intervene and assume the formal helm of a class action after the "filing" named plaintiffs have settled. The *Wheeler* case is dispositive, since it permitted non-filing intervenors to resuscitate a class action after the original filing plaintiffs had settled their individual claims.

The original plaintiffs and the intervenors are members of the same class. It was said in a case similar to that at bar, namely a class action where class action status had been denied by the District Court: "The plaintiffs and the [intervenor are] members of the same class. Any distinction between them such as the filing of an EEOC ... complaint ... is not significant. Once a timely administrative complaint has been filed by one [member of the class] all others who are discharged by operation of the rule are entitled to recover." *Romasanta* [, *supra* ].

*Wheeler,* 563 F.2d at 1239.

In *Wheeler,* class certification had been denied by the district court, whereas in this case, the class has yet to be certified. However, the timing of class certification has never been held significant in determining whether to apply the single-filing rule, which has, indeed, been applied in non-class actions. *Cf., Bernard v. Gulf Oil Co.,* 596 F.2d 1249 (5th Cir.1979) (single-filing rule applied to class members and named plaintiffs prior to class certification); *Wheeler, supra* (rule applied after denial of certification); *Oatis, supra* (certified class); *Crawford v. United States Steel Corp.,* 660 F.2d 663 (5th Cir.1981) (non-class action).

The initial administrative filing by Winker and Berry fully served the purpose of that remedy:

The purpose of the filing requirement is to insure "that the settlement of grievances be first attempted through the office of the EEOC." *Oatis,* 398 F.2d at 498. This purpose is not served in the present case by requiring each of the several plaintiffs to file essentially identical charges. *Id.* The settlement channels furnished by the filing requirement have been thoroughly exhausted with respect to these plaintiffs.

*Crawford v. United States Steel Corp.,* 660 F.2d at 666.

The Supreme Court in *McDonald* apparently acknowledged the legitimacy of intervention by a putative class member who relied upon the named plaintiff's EEOC filing. *McDonald,* 432 U.S. at 389. No sound rationale has been proposed for preventing such an intervenor from also acting as a

new class representative. (Failure to individually file, after all, only makes Vinson more representative of the putative class members.)

### B.
### *Equitable Tolling Mandated Under the Circumstances*

In July of 1979, when Berry and Winker settled, the single-filing rule was not etched in the case law with the distinctiveness that it has subsequently acquired, and Vinson took the wise legal precaution of commencing her administrative remedy process on or about October 1, 1979. It has now been held that this was unnecessary. However, it is also now concluded, as an alternative holding, that Vinson's filing was timely.

Defendant's first contention, that Vinson should have exhausted her remedies *prior* to submitting her letter of intervention, deserves little notice. Such an approach would simply spring a trap upon putative class members who had justifiably relied upon the named plaintiffs' complaint to represent their claims, and who justifiably believed that the filing of the class action complaint tolled all applicable statutes of limitations. *See, McDonald,* 432 U.S. at 389, 392, 97 S.Ct. at 2467, 2468; *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Under defendant's theory, any time named plaintiffs settle, before or after certification, the putative class members would be penalized for their reliance, by being precluded from intervening to keep the class action in being.

Defendant's second contention is that, assuming the thirty-day deadline for filing administrative remedies was tolled by the filing of the class complaint, it began to run again when Vinson received actual notice of the proposed individual settlements by the named plaintiffs on or about July 26, 1979. Since she did not file until October 1, 1979, defendant asserts that this filing was untimely.

The thirty-day filing requirement for federal employees is set by regulation, not by statute. 29 C.F.R. § 1613.214(a)(1) (1980). It is an unusually short period in which to expect a layman to initiate such a process. *Cf.* 42 U.S.C. § 2000e–5(e) (employee in private sector has 180 days in which to file a Title VII discrimination charge). By Civil Service Commission regulations and, subsequently, by Equal Employment Opportunity Commission regulations, the thirty-day filing rule for federal employees may be waived, extended, or equitably tolled. 29 C.F.R. § 1613.214(a)(4) (1982), *formerly* 5 C.F.R. § 713.214(a)(4) (1978). (Anomalously, the Fifth Circuit had recognized and applied this rule even before it determined that the thirty-day rule was not jurisdictional. *See, e.g., Huntley v. Department of H.E.W.,* 550 F.2d 290, 295 (5th Cir.1977); *Bickham v. Miller,* 584 F.2d 736 (5th Cir. 1978).) In fact, the regulations provide that the agency *"shall"* extend the time limits when the complainant shows that "he was not notified of the time limits and was not otherwise aware of them, *or* that he was prevented by circumstances beyond his control from submitting the matter within the time limits; *or* . . . for other reasons considered sufficient by the agency." 29 C.F.R. § 1613.214(a)(4) (emphasis added). The Court of Appeals has held that once a government agency "accepts a complaint and acts on it," at least where it determines that there has, in fact, been discrimination, the agency will be deemed to have waived any limitations defense. *Huntley v. Department of H.E.W., supra; Oaxaca v. Roscoe,* 641 F.2d at 390. Under the circumstances, equitable tolling appears necessary in this case for three reasons.

First, as Margaret Wells—another putative class member—discovered when she tried to file an administrative complaint in early August of 1979, defendant was construing a standing court order governing class actions in this court to prevent the defendant from hearing such administrative complaints. This made filings of administrative complaints futile until October 25, 1979, when this court explicitly authorized defendant to process such complaints. This was a "circumstance[ ] beyond [Vinson's] control" justifying a late filing. 29 C.F.R. § 1613.214(a)(4).

Second, when the EEOC finally issued its decision on appeal, reversing the agency's

final decision, it specifically determined that Vinson could include in her class complaint "allegations of discriminatory acts of a continuing nature ... even though such acts were not timely brought to the attention of her EEOC Counselor." EEOC Appeal No. 01800890, p. 2. This amounted to waiver under 29 C.F.R. § 1613.214(a)(4).

Third, and finally, equitable tolling of a waivable thirty-day rule is appropriate where the administrative process has demonstrated itself so utterly inept at achieving its primary objective as that process has proven itself here. The administrative complaints of Berry and Winker generated over six months delay and no agency response whatsoever. Those employees were able to settle their grievances only after a year of litigation, and not through any opportunities created by the administrative process. Vinson's administrative complaint brought more than a year's additional delay, culminating in an authoritative pronouncement that the complaint had been, in fact, properly filed. The administrative process in this case has not demonstrated itself to be the effective "settlement channel" that was envisioned by Congress. It has proven instead a pointless and perilous slalom stretching between federal employees and vindication of their statutory rights, and bestowing upon the employees little more than plentiful opportunities to incur time bars. Although mindful that the record of this court in this case, due to its onerous docket, is also not a proud one, the record of the administrative remedy process warrants adoption of the language of the D.C.Circuit in a similar case:

> In sum, [the complainant] reasonably attempted to bring his complaint before the administrative tribunal and it unreasonably refused to consider his claims. He could have done little more, and the agency could have hardly done less.

*Bethel v. Jefferson,* 589 F.2d 631, 645 (D.C. Cir.1978).

### IV.
#### Rule 24

■ Defendant has not disputed that, jurisdictional and time bars aside, Vinson otherwise qualifies for permissive intervention under Rule 24(b). Her intervention is incontestably timely under the standards governing Rule 24(b), as set forth in *United Air Lines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), especially since she manifested her desire to intervene "within the time period in which the named plaintiffs could have taken an appeal." *McDonald,* 432 U.S. at 396, 97 S.Ct. at 2471. The "critical fact" here, as in *McDonald,* is that

> As soon as it became clear to [the intervenor] that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests.

432 U.S. at 394, 97 S.Ct. at 2470. In fact, Vinson must have acted virtually the day she received notice.

For all of the foregoing reasons, Vinson's motion to intervene shall be granted, and defendant's motion to dismiss, or in the alternative, for summary judgment, must be denied.